O

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| ELISEO V. BARRAGAN, an individual; MARIA GUZMAN, an individual, ELISEO VARGAS, JR., an individual; MARYCHUY VARGAS, an individual; ELISEO V. VARGAS as guardian ad item for A.V., a minor; AGENLINA VARGAS, an individual and as guardian ad litem for M.P, a minor, A.P., a minor, and L.L. a minor, MIRTHA AYALA, an individual and as guardian ad litem for R.H., Jr. a minor and P.H., a minor , | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | Case No. CV 15-02614 DDP (FFMx)<br><br>**ORDER RE DEFENDANTS' MOTION TO DISMISS**<br><br>[Dkt. No. 7.] |
| Plaintiffs, | ) ) ) | |
| v. | ) ) | |
| DEUTSCHE BANK NATIONAL TRUST COMPANY, as Trustee, in Trust for Registered Holders of Long Beach Mortgage Loan Trust 2006-WL2, Asset-Backed Certificates, Series 2006-WL2, a banking business entity; SELECT PORTFOLIO SERVICING, a banking business entity, | ) ) ) ) ) ) ) ) ) ) | |
| Defendants. | ) ) | |

Presently before the Court is Defendants' motion to dismiss. (Dkt. No. 7.)  Having heard oral arguments and considered the parties' submissions, the Court adopts the following order.

**I.    BACKGROUND**

Plaintiff Barragan is the resident/owner of 4615-4615 3/4 Saint Charles Place, Los Angeles, CA 90019.  (Compl., ¶ 18.)  The mortgage on the property was secured by a deed of trust, initially held by JPMorgan Chase Bank and later transferred to Defendant U.S. Bank.  (<u>Id.</u> at ¶ 19.)  Several times between 2011 and 2014, Plaintiff fell behind on his mortgage payments and received notices of Defendant's intent to sell the property, based on Plaintiff Barragan's default.  (<u>Id.</u> at ¶¶ 20-33.)  Each time, Plaintiff Barragan immediately contacted the bank to make arrangements to bring his payments current.  (<u>Id.</u>)

On or shortly after March 6, 2014, Plaintiff Barragan received another such notice; he then submitted an application for a loan modification, as he alleges he was advised to do by Defendants. (<u>Id.</u> at ¶ 33-34.)  On August 15, 2014, Defendant Select Portfolio Servicing ("SPS") sent him a letter stating that it was reviewing Plaintiff's account "for loss mitigation assistance," including loan modification.  The letter announced that SPS would "continue the foreclosure process" while reviewing the account, but that "NO FORECLOSURE SALE WILL BE CONDUCTED AND YOU WILL NOT LOSE YOUR HOME during the evaluation."  (Compl., Ex. 1.)  On September 25, 2014, SPS sent another letter explaining that it had not received all the documents needed for its evaluation and was therefore "clos[ing] this request for review."  (<u>Id.</u>, Ex. 2.)  That letter also stated that Plaintiff Barragan had thirty calendar days to "contact SPS to

1  discuss the reason for non-approval," and that no foreclosure sale
2  would occur during the 30-day window.  (Id.)

3      On September 26, 2014, however, Defendants did conduct a
4  foreclosure sale.  (Compl., ¶ 39.)  Plaintiff Barragan alleges that
5  sometime shortly thereafter, one of his tenants on the property
6  refused to pay rent because of the foreclosure sale.  (Id. at ¶
7  40.)  On October 1, 2014, Plaintiff filed an unlawful detainer
8  action against the tenant.  (Id. at ¶ 41.)  The tenant's defense to
9  the unlawful detainer action was that Plaintiff was not the owner
10  of the property.  On November 1, a judge denied Plaintiff
11  Barragan's claim on the ground that he was not the record owner of
12  the property.  (Id. at ¶ 43.)

13      On October 21, 2014, Plaintiff filed for bankruptcy.  (Id. at
14  ¶ 44.)  The Complaint seems to indicate that at that time he was
15  unaware that the foreclosure sale had taken place and acted in
16  reliance on Defendants' representation that no foreclosure sale
17  would take place.  (Id.)  Defendant Deutsche Bank then obtained
18  relief from the automatic stay in the bankruptcy and evicted the
19  residents from the property on January 8, 2015.  (Id. at ¶¶ 46-51.)
20  Also on January 8, Plaintiff Barragan's bankruptcy plan was not
21  confirmed by the bankruptcy judge, because Plaintiff was no longer
22  the owner of the property.  (Id. at ¶ 52.)  On January 9, 2015,
23  Plaintiff Barragan alleges, a representative of Defendant SPS
24  admitted that "it was wrong for them to have foreclosed" and told
25  him the foreclosure sale would be rescinded.  (Id. at ¶ 54.)
26  Plaintiffs filed this action in state court on January 20, 2015.
27  (Compl. at 1.)  The sale was rescinded on March 25, 2015.  (Defs.'
28

1   RJN, Ex. 13.)  This action was removed to federal court on April 8,
2   2015.  (Dkt. No. 1.)
3   **II.   LEGAL STANDARD**
4        In order to survive a motion to dismiss for failure to state a
5   claim, a complaint need only include "a short and plain statement
6   of the claim showing that the pleader is entitled to relief."  <u>Bell</u>
7   <u>Atl. Corp. v. Twombly,</u> 550 U.S. 544, 55 (2007) (quoting <u>Conley v.</u>
8   <u>Gibson,</u> 355 U.S. 41, 47 (1957)).  A complaint must include
9   "sufficient factual matter, accepted as true, to state a claim to
10  relief that is plausible on its face."  <u>Ashcroft v. Iqbal</u>, 556 U.S.
11  662, 678 (2009) (quoting <u>Twombly</u>, 550 U.S. at 570).  When
12  considering a Rule 12(b)(6) motion, a court must "accept as true
13  all allegations of material fact and must construe those facts in
14  the light most favorable to the plaintiff."  <u>Resnick v. Hayes</u>, 213
15  F.3d 443, 447 (9th Cir. 2000).
16  **III. DISCUSSION**
17  **A.   Judicial Estoppel**
18       As an initial matter, Defendants contend that Plaintiff
19  Barragan is judicially estopped from bringing any of his claims,
20  because he did not list his claims as assets in his bankruptcy.
21  Plaintiffs argue, however, that he is not estopped, because the
22  present claims were filed with this Court several months after the
23  bankruptcy was filed.
24       "Judicial estoppel is an equitable doctrine that precludes a
25  party from gaining an advantage by asserting one position, and then
26  later seeking an advantage by taking a clearly inconsistent
27  position."  <u>Hamilton v. State Farm Fire & Cas. Co.</u>, 270 F.3d 778,
28  782 (9th Cir. 2001).  A party is judicially estopped if the two

1  positions asserted are "clearly inconsistent," a court actually

2  accepted and relied on the earlier position, and the party would

3  either receive an unfair advantage or impose an unfair detriment on

4  the opposing party by asserting the inconsistent positions.  Id. at

5  782-83.

6      Specifically, a party who files for bankruptcy but fails to

7  list a pending legal claim among his assets has asserted

8  inconsistent claims before the bankruptcy court and the other

9  court, and may be estopped from pursuing his legal claim.  Id. at

10  784.  Nor does the legal claim have to be filed prior to the filing

11  of the bankruptcy to be estopped: "Judicial estoppel will be

12  imposed when the debtor *has knowledge of enough facts to know that*

13  *a potential cause of action exists during the pendency of the*

14  *bankruptcy*, but fails to amend his schedules or disclosure

15  statements to identify the cause of action as a contingent asset."

16  Id. (emphasis added).

17      In this case, it is undisputed that Plaintiff Barragan did not

18  include any notice of his legal claims in his bankruptcy petition.

19  Barragan alleges that he did not actually know at the time he filed

20  the petition that Defendants had proceeded to the foreclosure

21  sale.[1]  Nonetheless, he must have known of the sale by November 1,

22  2014, when the state court ruled against him in the unlawful

23  detainer action – or at the very latest by November 5, 2014, when

24  Deutsche Bank filed for relief from the bankruptcy court's

25  automatic stay.  He knew of facts related to his causes of action

26

27      [1]The parties do not brief, and the Court does not at this

28  point determine, whether Barragan immediately had constructive knowledge of the foreclosure sale based on recordation.

1    as to the evictions by January 8, 2015.  He certainly knew all the

2    relevant facts when he filed this action on January 20, 2015.  Yet

3    to date, nearly six months later, Plaintiff Barragan does not seem

4    to have amended his bankruptcy schedules to reflect this lawsuit.

5         On the other hand, there has not yet been a decision in the

6    bankruptcy case; thus, it is not clear that Plaintiff Barragan has

7    yet obtained an unfair advantage in the bankruptcy by failing to

8    disclose this suit.  The bankruptcy court has continued the hearing

9    in his case to June 24, 2015.  (Bankruptcy Case No. 2:14-bk-29876-

10   SK, Dkt. No. 27.)  Thus, the bankruptcy court does not appear to

11   have "accepted" Plaintiff Barragan's representations yet, nor has

12   he yet received a confirmed bankruptcy plan based on those

13   representations.

14        The Court therefore orders as follows: if Plaintiff Barragan

15   does not amend his bankruptcy schedules to reflect any and all

16   claims he wishes to pursue in this case before the bankruptcy court

17   confirms a bankruptcy plan, the Court will consider his claims

18   estopped and will dismiss at that time, on an appropriate and

19   timely motion by Defendants.  If he does amend his bankruptcy

20   schedules before any decision by the bankruptcy court on his

21   bankruptcy plan, he may proceed with his claims.

22   **B.   Standing As To Other Plaintiffs**

23        Defendants argue that the Plaintiffs other than Barragan do

24   not have standing to bring these claims, because "all of the claims

25   raised in the Complaint are predicated upon the contractual

26   relationship between Plaintiff Barragan and Defendants."  (Defs.'

27   Mem. P. & A. at 6.)  This is not quite true: the wrongful eviction,

28   interference with contract, and negligence claims are not directly

6

1  predicated on that relationship and could, in a theoretical sense,

2  stand as independent torts.  As to the other claims, however,

3  Defendants are correct.

4       Plaintiffs assert that they do have standing, because they

5  were "foreseeable victims, were forced from their home, and were

6  damaged thereby."  (Opp'n at 8:16-18.)  Plaintiffs cite no

7  authority that these facts, even if shown, give them standing.  To

8  establish standing, "the plaintiff must have suffered an 'injury in

9  fact'—an invasion of a legally protected interest." Lujan v.

10 Defenders of Wildlife, 504 U.S. 555, 560 (1992).

11      The alleged agreement between Barragan and Defendants[2] cannot

12 provide that legally protected interest: "It is a general rule of

13 law that before recovery can be had under a contract by a third

14 party, he must show that the contract was made for his direct

15 benefit."  Williams v. Fenix & Scisson, Inc., 608 F.2d 1205, 1208

16 (9th Cir. 1979).  No facts have been alleged to show that the

17 agreement, if any, was for the other Plaintiffs' benefit

18 specifically, rather than Barragan's benefit as a homeowner, or

19 that Defendants knew that it was for their benefit.[3]

20      Similarly, the consumer protection statutes cited in the

21 Complaint operate for the benefit of homeowners, and Plaintiffs

22

23

_____

24      [2]Or, more likely, quasi-contract.  See Part III.C., infra.

25      [3]"A third party . . . has an enforceable right by reason of a
   contract made by two others . . . if the promised performance will
26 be of pecuniary benefit to him and the contract is so expressed as
   to give the promisor reason to know that such benefit is
27 contemplated by the promisee as one of the motivating causes of his
   making the contract."  Williams v. Fenix & Scisson, Inc., 608 F.2d
28 1205, 1208 (9th Cir. 1979) (emphasis added).

1  have cited no authority to show that they should be extended to

2  provide a private right of action to renters.

3       Finally, the non-Barragan Plaintiffs are also not entitled to

4  a quiet title action or a wrongful foreclosure action, as they are

5  not the owners of the property in question.

6       On all causes of action except wrongful eviction, interference

7  with contract, and negligence, Plaintiffs other than Barragan do

8  not have standing in this case.

9  **C.   Breach of Contract Claim**

10       Plaintiffs allege that Defendants were "contractually

11  obligated" not to foreclose on the property, both because of the

12  existence of certain consumer protection statutes and because of

13  the letters SPS sent to Plaintiff Barragan averring that there

14  would be no sale and he would not lose his home.  (Compl., ¶¶ 57-

15  59.)

16       In California, a plaintiff asserting breach of contract must

17  prove the following elements: "(1) existence of the contract; (2)

18  plaintiff's performance or excuse for nonperformance; (3)

19  defendant's breach; and (4) damages to plaintiff as a result of the

20  breach."  CDF Firefighters v. Maldonado, 158 Cal.App.4th 1226,

21  1239, 70 Cal.Rptr.3d 667 (2008).  "Under California law, the

22  essential elements for a contract are (1) parties capable of

23  contracting; (2) their consent; (3) a lawful object; and (4)

24  sufficient cause or consideration.  U.S. ex rel. Oliver v. Parsons

25  Co., 195 F.3d 457, 462 (9th Cir. 1999).

26       Here, there was no contract.  Consumer protection statutes,

27  though they form part of the background of a lawful contract, do

28  not create a contract out of thin air.  As to the letters, they

1   also do not create a contract, because there is no consideration.

2   Even assuming SPS promised not to initiate a foreclosure sale, it

3   received nothing of benefit from Plaintiff Barragan in exchange for

4   that promise.   Plaintiffs state that Barragan "has performed and

5   was ready, willing, and able to perform all acts required . . . as

6   stated in the SPS letters," (Compl., ¶ 60), but they do not

7   identify any such acts that would have benefitted SPS (as opposed

8   to mere procedural requirements for a loan modification).   There is

9   thus no consideration alleged, and thus no valid contract alleged.[4]

10       However, Plaintiffs allege Plaintiff Barragan's good-faith

11  reliance on SPS's promises in the letters.   (E.g., Opp'n at 7:14-

12  20.)   It appears, therefore, that the Complaint is attempting to

13  plead the elements of a quasi-contract or promissory estoppel

14  claim.   The Court will not attempt to divine the details of that

15  claim at present; it is enough to note that it does not appear

16  futile for Plaintiffs to attempt to amend their complaint to state

17  such a claim.

18       The Court therefore holds that there is no breach of contract

19  claim and dismisses the first cause of action, but with leave to

20  amend to state a claim for promissory estoppel regarding reliance

21  on the letters.

22  **D.   Wrongful Foreclosure**

23       The basic elements of a tort cause of action for wrongful

24  foreclosure are as follows:

25

26  _____

27       [4]The Court also notes that the letters were sent by SPS and do
    not appear to include Deutsche Bank either by name or by
28  implication.   Thus, apart from the above considerations, the
    letters cannot have created a contract binding Deutsche Bank.

1    (1) the trustee or mortgagee caused an illegal, fraudulent, or

2    willfully oppressive sale of real property pursuant to a power

3    of sale in a mortgage or deed of trust; (2) the party

4    attacking the sale . . . was prejudiced or harmed; and (3) in

5    cases where the trustor or mortgagor challenges the sale, the

6    trustor or mortgagor tendered the amount of the secured

7    indebtedness or was excused from tendering.

8  Miles v. Deutsche Bank Nat'l Trust Co., 236 Cal. App. 4th 394, 408

9  (2015).  The plaintiff must also show that "no breach of condition

10 or failure of performance existed on the mortgagor's or trustor's

11 part which would have authorized the foreclosure or exercise of the

12 power of sale."  Id.  Wrongful foreclosure is a tort, and tort

13 damages are recoverable for all proximately-caused injuries to the

14 plaintiff, including lost equity, moving expenses, lost rental

15 income, damage to credit, emotional distress, and punitive damages.

16 Id. at 409.

17     Here, plaintiff alleges an illegal or willfully oppressive

18 sale, based on the same reliance theory advanced in the contract

19 claim above.  Had Plaintiff and Defendants reached a formal

20 agreement to modify the loan and bring the payment current,

21 Defendants could not have lawfully foreclosed.  Barroso v. Ocwen

22 Loan Servicing, LLC, 208 Cal. App. 4th 1001, 1017 (2012).  What the

23 effect is of an informal promise not to foreclose after closure of

24 the review process is less clear.  But "[a] foreclosure sale . . .

25 can be set aside if the beneficiary or assignor gives false and

26 misleading information to the trustor that prevents a cure of the

27 default before the foreclosure sale."  4 Harry D. Miller & Marvin

28

B. Starr, Cal. Real Est. § 10:254 (3d ed., 2000).[5]  Here, Plaintiff Barragan alleges that Defendants essentially provided false and misleading information about how much time he had before the foreclosure sale would take place.

Plaintiff Barragan can also allege harm, because, as noted above, damages in an action for wrongful foreclosure are not limited to the equity in the home (which in this case was presumably restored when the sale was rescinded) but can also encompass moving expenses, lost rental income, and so on.

Thus, the key question is whether Plaintiff met his obligations under the tender rule and the performance rule. Despite the somewhat confusing terminology, the requirement that the plaintiff "tender[] the amount of the secured indebtedness" does not necessarily mean that he must tender the entire amount of the loan.  Numerous cases define the tender required as "the amount due to cure any default in the obligation to defendant." Munger v. Moore, 11 Cal. App. 3d 1, 8 (Ct. App. 1970). See also Onofrio v. Rice, 55 Cal. App. 4th 413, 424 (1997); Garcia v. World Sav., FSB, 183 Cal. App. 4th 1031, 1043 (2010); Miller v. Washington Mut. Bank FA, 776 F. Supp. 2d 1064, 1069 (N.D. Cal. 2011); Barroso v. Ocwen Loan Servicing, LLC, 208 Cal. App. 4th 1001, 1017 (2012).

There is a competing line of cases that holds the opposite, stating an apparently absolute rule that the mortgagor must pay the entire amount of the debt.  See, e.g., Arnolds Mgmt. Corp. v. Eischen, 158 Cal. App. 3d 575, 578 (1984) ("It is settled that an

---

[5]See also, e.g., Wade v. Markwell & Co., 118 Cal. App. 2d 410, 428-29, 258 P.2d 497, 507 (1953) (pledgor could maintain action for conversion against pledgee who promised that pledgor could redeem property "any time within the succeeding week," then sold the property before the week was out).

action to set aside a trustee's sale for irregularities in sale notice or procedure should be accompanied by an offer to pay the full amount of the debt for which the property was security.")  But that line of cases ignores the maxim that tender is not required when it would be inequitable to do so.  <u>Onofrio</u>, 55 Cal. App. 4th at 424.[6]  It also ignores Cal. Civ. Code § 2924c, which provides that mortgagors may avoid nonjudicial foreclosure by tendering the amount *in default*.  Section 2924c expresses a clear legislative preference for borrowers to keep their homes if they can tender the amount necessary to cure the default.  For judges to nonetheless allow lenders or trustees to wrongfully or fraudulently foreclose, with no penalty unless the borrower can, for some reason, tender the amount of the mortgage in full,[7] would seem to be an extraordinary invitation to lenders to behave unjustly.

Here, Plaintiff Barragan alleges that he "[i]mmediately . . . contacted Deutsche Bank and SPS to make arrangements to bring the monthly mortgage payment current." (<u>Id.</u>)  Plaintiff alleges that he was "ready, willing, and able to perform" but that he was advised by Defendants to submit a loan application instead. (<u>Id.</u> at ¶¶ 33, 68.)  Where a trustee has refused the tender of the amount due, "the trustor may recover damages from the trustee." <u>Moeller v. Lien</u>, 25 Cal. App. 4th 822, 832 (1994).

---

[6]Indeed, the equitable "exceptions and qualifications" to the tender rule are so numerous that some courts have found that they militate "against a blanket requirement of the tender rule at the pleading stage." <u>Tamburri v. Suntrust Mortgage, Inc.</u>, No. C-11-2899 EMC, 2011 WL 6294472, at *5 (N.D. Cal. Dec. 15, 2011).

[7]Presumably borrowers would not borrow if they could pay the purchase price of the home in full, so the requirement that they do so when a lender or trustor wrongfully forecloses borders on the absurd.

Defendants argue that Plaintiff Barragan cannot make out a claim for wrongful foreclosure, because on the facts alleged he had failed to perform by not paying the monthly mortgage payments. (Compl., ¶ 33 (admitting that monthly payments were not "current" at the time the foreclosure sale notice was issued).)  But the point of the performance rule, as the <u>Miles</u> court explained, is simply to ensure that an otherwise valid sale is not voided for merely technical violations.  236 Cal. App. 4th at 409.  To read it as a bar based on failure to actually pay, where the trustor or lender has effectively declined to accept payment and has misled the borrower as to how much time is available to him to take action to cure the default, would, again, produce an inequitable result.

Plaintiff has pled sufficient facts to state a claim for wrongful foreclosure.

**E.    Consumer Protection Act**

Plaintiffs allege that Defendants violated the Dodd-Frank Wall Street Reform and Consumer Protection Act of 2010.  However, Plaintiffs point to no particular section of that act that has been violated, nor to any particular facts supporting an allegation that a violation has occurred.

Plaintiff does allege that Defendants "violated" the Consumer Financial Protection Bureau and the "National Mortgage Settlement (NMS) Act."  As to the former, it is hard to see how a government agency can be violated.  As to the latter, the Court assumes this refers to the consent decree commonly referred to as the "National Mortgage Settlement," <u>see</u> <u>United States et al. v. Bank of America et al.</u>, No. 12-cv-00361-RMC (D.D.C. April 4, 2014).  However, in the absence of citations or anything other than the most minimal or

13

1  conclusory argument in either the complaint or the opposition, (see
2  Opp'n at 9), the Court declines to attempt to discern how that
3  settlement relates to this case.

4        This cause of action is therefore dismissed.

5  **F.   California Home Owner Bill of Rights**

6        Plaintiffs allege that Defendants violated the anti-"dual
7  tracking" provisions of the Home Owner Bill of Rights ("HOBR"),
8  which provides that:

9        If a borrower submits a complete application for a first lien
10       loan modification offered by, or through, the borrower's
11       mortgage servicer, a mortgage servicer, mortgagee, trustee,
12       beneficiary, or authorized agent shall not record a notice of
13       default or notice of sale, or conduct a trustee's sale, while
14       the complete first lien loan modification application is
15       pending.

16  Cal. Civ. Code § 2923.6(c).

17       Defendants argue that Plaintiff Barragan cannot allege a
18  violation of HOBR's anti-dual tracking provision for two reasons.
19  First, he is not a borrower under HOBR, because he "has filed a
20  case under Chapter . . . 13 of Title 11 of the United State code"
21  and "the bankruptcy court has not entered an order closing or
22  dismissing the bankruptcy case."  Cal. Civ. Code § 2920.5(c)(2)(C).
23  Second, Defendants allege Plaintiff Barragan did not submit a
24  "complete application" for the loan modification.

25       Plaintiff was a "borrower" for purposes of alleging a
26  violation of the anti-dual tracking provision of the HOBR.  On the
27  facts alleged in the complaint, Plaintiff was not in a bankruptcy
28  proceeding when he applied for the modification, nor when the

                                    14

notice of sale was recorded, nor even when the sale took place.
See McLaughlin v. Aurora Loan Servs., LLC, No. SACV 13-01653 JVS
RN, 2015 WL 1926268, at *7 (C.D. Cal. Apr. 28, 2015) (plaintiff who
filed bankruptcy was "borrower" under the statute because "neither
of her bankruptcy petitions were pending when she sought loan
modifications"); Withers v. J.P. Morgan Chase Bank N.A., No. C
14-0351 SBA, 2014 WL 3418367, at *5 (N.D. Cal. July 11, 2014)
(plaintiff was "borrower" under the statute because "both
bankruptcy cases were dismissed prior to the recording of the
Notice of Trustee's Sale").  That Plaintiff Barragan later filed a
bankruptcy case is irrelevant to whether the foreclosure and sale
violated HOBR.

     As to whether Plaintiff Barragan submitted a "complete
application," that is a factual question that is better resolved
later.  "[A]n application shall be deemed 'complete' when a
borrower has supplied the mortgage servicer with all documents
required by the mortgage servicer within the reasonable timeframes
specified by the mortgage servicer."  Cal. Civ. Code § 2923.6(h).
At the moment, Plaintiff Barragan alleges that he "began the
process of a loan modification" and that "SPS acknowledged receipt
of the loan modification."  (Compl., ¶¶ 33-34.)  The Court cannot
determine from Plaintiff's exhibits (Compl., Exs. 1, 2) what
documents were required, nor what the timeframe was for supplying
them.  Although Plaintiff's exhibits indicate that SPS informed
Plaintiff he had not submitted sufficient documentation, (id., Ex.
2), that determination by an interested party is not enough by
itself to conclusively show that Plaintiff cannot state a plausible
claim for relief under the anti-dual tracking statute.  For

1 purposes of the present motion, the Court finds that Plaintiff has

2 alleged, albeit minimally, that he submitted a complete

3 application.

4      Plaintiff Barragan adequately states a claim for violation of

5 the anti-dual tracking provision of the HBOR.

6 **G.   Quiet Title**

7      A complaint for an action to quiet title must plead, inter

8 alia, "the adverse claims to the title of the plaintiff against

9 which a determination is sought."  Cal. Civ. Proc. Code §

10 761.020(c).  The complaint alleges that the "current title owner

11 and purchase of the Property appears to be Defendant, Deutsche

12 Bank."  (Compl., ¶ 95.)  However, judicially noticeable public

13 records show, and Plaintiff admits, that the sale was subsequently

14 rescinded.  (Defs.' RJN, Ex. 13; Opp'n at 9.)  Thus, the claim

15 would appear to be moot.

16      Additionally, Plaintiff Barragan has not alleged that he has

17 paid the debt secured by his mortgage.  A mortgagor "cannot quiet

18 his title against the mortgagee without paying the debt secured."

19 Lane v. Vitek Real Estate Indus. Grp., 713 F. Supp. 2d 1092, 1103

20 (E.D. Cal. 2010).

21      This claim is therefore dismissed.

22 **H.   Wrongful Eviction**

23      California recognizes the tort of wrongful eviction.  Barkett

24 v. Brucato, 122 Cal. App. 2d 264, 275 (1953).  That tort is

25 understood to be "a nontrespassory invasion of another's interest

26 in the private use and enjoyment of land if . . . the invasion the

27 invasion is either . . . intentional and unreasonable; or . . .

28 unintentional and otherwise actionable under the rules governing

liability for negligent, reckless or ultrahazardous conduct." <u>Id.</u>
at 274-75.  Generally, the claim lies where the plaintiff vacates
the premises within a reasonable time.  <u>Nativi v. Deutsche Bank</u>
<u>Nat'l Trust Co.</u>, 223 Cal. App. 4th 261, 292 (2014).

The tort is usually applied in cases where a landlord engages
in self-help or otherwise behaves badly toward his tenants in an
effort to get them to leave.  Nonetheless, "[a]lthough wrongful
eviction can refer to eviction of a tenant or purchaser and be
based in contract, it can also refer to an action that is not based
in contract as, for example, the eviction of a trespasser."
<u>Stanford Ranch, Inc. v. Maryland Cas. Co.</u>, 89 F.3d 618, 628 (9th
Cir. 1996).  The key inquiry is whether the defendant "tortiously
evict[ed] another from property if the other had some right to be
there."  <u>Id.</u>

Plaintiffs do not point to any authority applying this tort to
the use of the foreclosure process.  However, in <u>Campos v. Bank of</u>
<u>Am., Inc.</u>, the court found that plaintiffs alleging a deficient
foreclosure sale could also allege wrongful eviction, inasmuch as
they were forced to leave the property to avoid an action for
unlawful detainer.  No. C 11-0431SBA, 2011 WL 2600888, at *5-6
(N.D. Cal. June 30, 2011).

Additionally, Plaintiffs allege that there was at least one
non-family, paying tenant.  A bona fide tenant does not lose his
rights of occupancy after a foreclosure, except under certain
circumstances defined by statute.  Protecting Tenants at
Foreclosure Act of 2009, PL 111-22, May 20, 2009, 123 Stat 1632,
1660-61 ("In the case of any foreclosure on a federally-related
mortgage loan or on any dwelling or residential real property

17

1   after the date of enactment of this title, any immediate successor

2   in interest in such property pursuant to the foreclosure shall

3   assume such interest subject to . . . the rights of any bona fide

4   tenant . . . under any bona fide lease entered into before the

5   notice of foreclosure . . . ."). <u>See also</u> Cal. Civ. Proc. Code §

6   1161b(b).  Although the complaint does not identify the non-family

7   tenant, the complaint could be amended to do so, and the statutory

8   protections for preexisting tenants could likewise form an

9   alternative basis for the wrongful eviction claim as to that

10  tenant.

11  **I.   Negligence**

12       Plaintiffs have not identified any particular legally

13  cognizable duty that Defendants owed them that would give rise to a

14  negligence claim.  "[A]s a general rule, a financial institution

15  owes no duty of care to a borrower when the institution's

16  involvement in the loan transaction does not exceed the scope of

17  its conventional role as a mere lender of money."[8] <u>Nymark v. Heart</u>

18  <u>Fed. Sav. & Loan Assn.</u>, 231 Cal. App. 3d 1089, 1096 (1991).  Only

19  where the lender "actively participates" in the financed activity

20  "beyond the domain of the usual money lender" does a duty of care

21  arise.  <u>Id.</u>  Plaintiffs have not alleged that Deutsche Bank or SPS

22  actively participated in the use or leasing of the mortgaged homes.

23  Rather, Defendants' activities as alleged have been limited to the

24  "conventional role" of a lender: servicing a mortgage loan and

25  reviewing the loan for modification.  <u>See Carbajal v. Wells Fargo</u>

26

27       [8]*A fortiori*, of course, a lender does not owe a duty of care

28  to third parties, even if they are negatively affected by actions
    on the loan.

18

1   <u>Bank, N.A.</u>, No. CV 14-7851 PSG PLAX, 2015 WL 2454054, at *5-6 (C.D.

2   Cal. Apr. 10, 2015) (reviewing cases and concluding there is no

3   duty of care in reviewing loan modification applications).

4       The negligence claim is therefore dismissed.

5   **J.  Interference With Contract**

6       "The elements which a plaintiff must plead to state the cause

7   of action for intentional interference with contractual relations

8   are (1) a valid contract between plaintiff and a third party; (2)

9   defendant's knowledge of this contract; (3) defendant's intentional

10  acts designed to induce a breach or disruption of the contractual

11  relationship; (4) actual breach or disruption of the contractual

12  relationship; and (5) resulting damage."  <u>Pac. Gas & Elec. Co. v.</u>

13  <u>Bear Stearns & Co.</u>, 50 Cal. 3d 1118, 1126 (1990).

14      Plaintiffs allege that Defendants interfered with Plaintiff

15  Barragan's contract with his tenant when they foreclosed, because

16  the tenant ceased paying rent when Plaintiff Barragan was no longer

17  the record owner of the property. (Compl., ¶¶ 40-43, 107-12.)  The

18  Court notes that the first element of the tort, if satisfied at

19  all, is satisfied only with a great deal of guesswork and

20  assumption on the Court's part.  The complaint does not appear to

21  identify Plaintiff Barragan's tenant, calling him or her only "the

22  one non-family tenant."  (<u>Id.</u> at ¶ 40.)  Nor does the complaint

23  explicitly allege a valid lease contract, though perhaps the

24  allegation that there is a "tenant" includes, by implication, an

25  allegation of a lease contract.

26      But the more fundamental flaw in Plaintiffs' complaint is that

27  it presents no facts that would allow the inference that the

28  foreclosure was "designed" to interfere with the contract, rather

19

1 than simply doing so as an incident to the purpose of acquiring the

2 property.  Plaintiffs assert that Defendants "knew (or reasonably

3 should have known)" of certain "rental contract agreements for this

4 multi-family 4-plex apartment unit." (<u>Id.</u> at ¶ 108.)  Perhaps,

5 given the nature of the property, this is reasonable.  But the

6 conclusory assertion that Defendants "deliberately attempted to

7 terminate these agreements," (<u>id.</u> at ¶ 109), without more, is not

8 enough to sustain this claim.

9      Additionally, there is something strange about an interference

10 with contract claim as to a change of ownership of a rental unit.

11 Presumably, if the foreclosure sale was not wrongful, the fact that

12 it effectively terminates the contractual relationship between the

13 tenant and the former landlord would not be a cause of action in

14 and of itself.  Plaintiff Barragan's wrongful foreclosure claim, if

15 successful, can provide a remedy for lost rental income, and that

16 vehicle seems more appropriate for dealing with the consequential

17 damages from an unlawful foreclosure, if unlawful it was.

18      The claim for interference with contract is dismissed.

19 **K.  Declaratory Relief**

20      "[A]ny court of the United States, upon the filing of an

21 appropriate pleading, may declare the rights and other legal

22 relations of any interested party seeking such declaration, whether

23 or not further relief is or could be sought."  28 U.S.C. § 2201(a).

24 Plaintiff Barragan seeks declaratory judgment as to the parties

25 "respective rights and duties . . . and their rights to foreclose

26 and/ownership title to the property." (Compl., ¶ 114.)  Although

27 much of the controversy in this case is backward-looking, nothing

28 prevents the Court from determining the rights and duties of the

20

1  parties going forward.  However, in this matter, it is unclear
2  exactly what rights and duties are controverted.  Plaintiff states
3  that Defendants "did not have the right to proceed with the
4  September 26, 2014, foreclosure Trustee's Sale" and therefore do
5  not have "the right to claim an ownership interest in the
6  Property."  (<u>Id.</u>)  But Defendants do not claim an ownership
7  interest in the property; the sale was rescinded.  The issue is
8  therefore moot, unless Defendants later lay claim to the property.
9      The Court dismisses this cause of action, but without
10 prejudice.

**IV.  CONCLUSION**

12     The Court GRANTS the motion IN PART.  The claims for breach of
13 contract, violation of the Consumer Protection Act, quiet title,
14 negligence, interference with contract, and declaratory relief are
15 DISMISSED in their entirety.  (The claim for declaratory relief is
16 dismissed without prejudice.)  All other claims except the claim
17 for wrongful eviction are dismissed as to Plaintiffs other than
18 Plaintiff Barragan.  Plaintiffs are granted LEAVE TO AMEND their
19 complaint to state a claim for promissory estoppel as to Plaintiff
20 Barragan and to identify the non-family tenant as to the wrongful
21 eviction claim.


IT IS SO ORDERED.




Dated: June 9, 2015




                              DEAN D. PREGERSON

                              United States District Judge